BRISCOE, Chief Judge,
concurring in part and dissenting in part.
I respectfully dissent from Part II.A of the majority opinion. Of the eight arguments DeChristopher advances in this appeal, I see merit only in his contention that the evidence at trial was insufficient to convict him on Count 1 of the indictment. Consequently, I would reverse the judgment of the district court as regards the conviction on that count. I would otherwise affirm the judgment.
Count 1 charged DeChristopher with violating Chapter 3A of the Federal Onshore Oil and Gas Leasing Reform Act (FOOGLRA), 30 U.S.C. § 195(a)(1), which makes it “unlawful for any person ... to organize or participate in any scheme, arrangement, plan, or agreement to circumvent or defeat the provisions of this chapter or its implementing regulations.” 30 U.S.C. § 195(a)(1). Count 1 specifically alleged that “[o]n or about December 19, 2008,” DeChristopher “did organize and participate in a scheme, arrangement, plan, and agreement to defeat the provisions of [FOOGLRA] ... by knowingly interfering with the competitive bidding process of the sale of federal oil and gas leases.” And at trial, Jury Instruction No. 13 outlined in the following manner the essential elements of this alleged offense:
The defendant is charged in Count 1 with a violation of [FOOGLRA] by interfering with the competitive bidding process of the December 19, 2008 oil and gas lease auction. To find the defendant guilty of this offense you must be convinced that the United States has proved each of the following beyond a reasonable doubt:
First, the defendant knowingly organized or participated in a scheme or plan; and
Second, the scheme or plan was intended to circumvent or defeat the competitive bidding process of the sale of federal oil and gas leases.
“Knowingly” means that the action was done voluntarily and intentionally and not because of mistake or accident.
Dist. Ct. Document 65, at 15 (Instruction No. 13).
*1100 According to the majority, DeChristopher “is arguing the Government failed to prove a required element,” i.e., “group activity,” “but that element was not part of the jury instructions.” Op. at 1091 n. 4. I disagree. In challenging the sufficiency of the evidence supporting his conviction on Count 1, DeChristopher argues that “[t]he statutory language of the offense [he] was charged with and convicted of describes an anticipatory or inchoate offense similar to conspiracy, the gravamen of which is multiple people consorting to evade the laws governing the auction process.” Aplt. Br. at 18. More specifically, he argues that “[t]he [statutory] terms ‘organize’ and ‘participate’ refer to group or shared activity” and “would be superfluous if Congress had intended for individual liability for individual intentions to violate the law.” Id. at 18-19. In turn, he argues that “[t]here was no evidence presented ... that [he] participated, organized, or acted jointly or in concert with any other person in a scheme, arrangement, plan or agreement to defeat any law.” Id. at 19.
In my view, DeChristopher’s arguments are entirely consistent with, rather than foreclosed by, the language of Jury Instruction No. 13. As noted, Instruction No. 13 specifically employed the statutory words “organized” and “participated.” DeChristopher is now arguing that these words, which were not defined for the jury, can only be construed to encompass group activity, and that the government failed to present any evidence of group activity.[1]
Thus, in sum, the question posed by DeChristopher is whether the language of 30 U.S.C. § 195(a)(1), upon which Count 1 of the indictment and the jury instructions were based, is aimed at group activity or whether a single person acting alone can violate the statute. If proof of the latter is not enough, we must next address whether under plain error DeChristopher’s conviction on count one can be upheld.
The plain language of § 195(a)(1) reveals a distinct evidentiary shortfall in the government’s case against DeChristopher. Congress did not make it unlawful to “engage in conduct” that circumvents or defeats the provisions of FOOGLRA. Rather, it chose words that commonly denote group activity, both in everyday language and other statutory provisions. Here, it is undisputed that DeChristopher acted alone — a fact the government and the majority confront by twisting the common understanding of “organize” and “participate” to cover the conduct of a lone actor. This deficiency is fatal to the government’s case. Even under plain error review, I would reverse DeChristopher’s conviction on this count.
I
In 1987, Congress enacted FOOGLRA to reform the process for competitively awarding and administering oil and gas *1101 leases on federal lands. See Pub.L. 100-203, 101 Stat. 1330. The enforcement provision of the law makes it “unlawful for any person ... to organize or participate in any scheme, arrangement, plan, or agreement to circumvent or defeat the provisions of this chapter or its implementing regulations.” 30 U.S.C. § 195(a)(1). The following subsection provides that “[a]ny person who knowingly violates the provisions of subsection (a) of this section shall be punished by a fine of not more than $500,000, imprisonment for not more than five years, or both.” Id. § 195(b). What evidence is required to support a conviction under FOOGLRA is a matter of first impression before the federal courts, and, as a consequence, our interpretation of the statute and the proofs required to sustain a conviction under it have the potential to affect more than just DeChristopher’s prosecution.
DeChristopher argues that the plain language of the statute requires the government to prove that he and at least one other person “shared the goal” of defeating or circumventing specific, known provisions of chapter 3A of Title 30. Aplt. Br. at 19-20. The government contends that we must review this argument under the plain error standard because DeChristopher did not present it to the district court.
I agree with the majority and the government that we must apply plain error review to this argument because DeChristopher failed to raise it in the district court.[2] Under the plain error standard, DeChristopher has the burden of demonstrating: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. McGehee, 672 F.3d 860, 876 (10th Cir.2012). The error generally must be “clear or obvious under current law.” United States v. Brown, 316 F.3d 1151, 1158 (10th Cir.2003) (quotation omitted). But “the absence of circuit precedent does not prevent the clearly erroneous application of statutory law from being plain error.” Id. (quotation and brackets omitted).
Of course, little about this case of first impression is “clear or obvious.” The parties are unaware of any previous prosecution under § 195(a) since it was enacted in 1987. And I agree with the majority that this seems to have been the first. But even in the absence of precedent, I would still conclude plain error is established here because the acts alleged and presumably found by the jury do not fall within the scope of the statute.
In interpreting federal statutes, “we first and foremost look to the statute’s language to ascertain Congressional intent,” giving words their ordinary and plain meaning. United States v. West, 671 F.3d 1195, 1199 (10th Cir.2012). If the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute. United States v. Sprenger, 625 F.3d 1305, 1307 (10th Cir.2010) (quotation omitted). “The plain meaning of legisla *1102 tion should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.” United States v. Ron Pair Enters., Inc., 489 U.S. 235, 243, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quotation omitted). “In such cases, the intention of the drafters, rather than the strict language, controls.” Id.
Again, the statute makes it “unlawful for any person ... to organize or participate in any scheme, arrangement, plan, or agreement to circumvent or defeat the provisions of this chapter or its implementing regulations.” 30 U.S.C. § 195(a)(1). The plain language of the statute suggests that it targets action taken in concert with others to defeat or circumvent FOOGLRA or its implementing regulations. Both verbs selected by Congress — “organize or participate” — indicate group activity. See Oxford English Dictionary (online; March 2012) (defining “organize,” inter alia, as “[t]o coordinate or manage the activities of (a group of people),” or “to plan organized action”); id. (defining “participate” as “[t]o take part; to have a part or share with a person”). The four potential objects of the action' — -“any scheme, arrangement, plan, or agreement” — also suggest group activity, although not as compellingly. Id.' (defining “scheme” as a “plan of action devised in order to attain some end; a purpose together with a system of measures contrived for its accomplishment”); id. (defining “arrangement” as “[disposition of measures for the accomplishment of a purpose; preparations for successful performance”); id. (defining “plan” as an “organized (and usually detailed) proposal according to which something is to be done; a scheme of action; a strategy; a programme, schedule” or “an offensive strategy; a scheme to defeat, capture, or prevail over someone or something, or a method of achieving this”); id. (defining “agreement” as a “coming into accord; an arrangement between two or more persons as to a course of action”). Congress’s use of these terms in other statutes suggests it understands these verbs apply to actions involving more than one person. For example, it is unlawful to travel interstate with intent “to organize, promote, encourage, participate in, or carry on a riot.” 18 U.S.C. § 2101(a). More benignly, federal law authorizes the administrator of the Federal Emergency Management Agency “to organize, or to participate in organizing, an annual conference on fire prevention and control.” 15 U.S.C. § 2213. In these and various other contexts, organizing and participating suggest either concerted action by more than one person — such as a riot — or individual acts bearing on some group activity' — such as coordinating a conference.
Even if reasonable minds could disagree on the plain meaning of “organize” and “participate,” application of FOOGLRA’s enforcement provision on these facts would “produce a result demonstrably at odds with the intentions of its drafters.” Ron Pair Enters., 489 U.S. at 243, 109 S.Ct. 1026. On this point, we are not without helpful guidance from legislative history, which elucidates whatever the plain language leaves unclear.
The civil and criminal penalties provided in FOOGLRA’s enforcement provision were intended to curtail a proliferation of fraud and abuse by private parties in the government’s leasing of oil and gas rights on federal lands. See H.R.Rep. No. 378, 100th Cong., 1st Sess. 15 (1987) (explaining that enforcement provision is intended to “combat fraud and abuse of the federal oil and gas leasing program”); S.Rep. No. 188, 100th Cong., 1st Sess. 1 (1987) (listing as one purpose of reform legislation the *1103 need to “strengthen the Federal authority to stop certain unlawful practices with respect to mineral leasing engaged in by private parties” (emphasis added)). The house report documented specific forms of fraud that had arisen in the industry:
Fraud and abuse has long been associated with the lottery used to issue the vast majority of leases on a noncompetitive basis. On occasion, the system has been subject to manipulation and due to continuing deficiencies in making geological determinations relating to oil and gas structures, lands which should have been issued by competitive leasing to the highest bidder were instead issued noncompetitively for a minimal filing fee. Another major problem involves the so-called “40 Acre Merchants” who obtain leases which contain no known oil or gas resources, divide them into parcels of less than 40 acres, and peddle them using false promises of high return to unsuspecting citizens ...
Due to these situations, there currently exists uncertainty over whether the noncompetitive leasing system can withstand fraud and abuse....
H.R.Rep. No. 378, 100th Cong., 1st Sess. 15 (1987). A report of the Senate Committee on Energy and Natural Resources explained that, before FOOGLRA, “the Federal onshore oil and gas leasing program ha[d] been criticized for ... speculation by third parties that engaged in fraudulent activities.” S.Rep. No. 188, 100th Cong., 1st Sess. 2 (1987). Specifically, “[cjertain companies ha[d] engaged in misrepresenting to the public the chance of winning leases, the value of the leases, and the likelihood of industry interest in buying leases from members of the public should they win leases in the lottery,” and “[a]dministrative remedies imposed by [the Department of Interior] ... ha[d] reduced but not eliminated [these] fraudulent and speculative activities.” Id. at 3.
This legislative history suggests this unusual statutory language was carefully chosen to address a specific problem: oil and gas industry insiders were using their expertise to exploit the weaknesses of the laws then applicable to oil and gas leasing. Considering this is a case of first impression in an area that sees little federal litigation, the majority’s failure to consult legislative history is puzzling. Both the legislative history and contemporary scholarship support my view that Congress intended § 195(a)(1) to combat fraudulent industry practices by groups of insiders. One pair of scholars explained that this subsection of FOOGLRA’s enforcement provision made it “unlawful to ‘organize or participate in’ any sort of group activity to get around the provisions” of oil and gas leasing laws.[3] Thomas L. Sansonetti & William R. Murray, A Primer on the Federal Onshore Oil and Gas Leasing Reform Act of 1987 and its Regulations, 25 Land & Water L.Rev. 375, 414 (1990) (emphasis added). Of all the legislative and scholarly sources to discuss FOOGLRA’s enforcement provision, none suggested it was intended to proscribe anything other than fraud by industry insiders who knew the law and sought to exploit its vulnerabilities through concerted action.
In my view, it is inconsistent with the statutory text and congressional intent, and ultimately clearly erroneous, to apply *1104 § 195(a)(1) to DeChristopher’s acts. Cf. Williams v. United States, 458 U.S. 279, 287, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) (“Absent support in the legislative history for the proposition that § 1014 was ‘designed to have general application to the passing of worthless checks,’ we are not prepared to hold petitioner’s conduct proscribed by that particular statute.” (citation omitted)). The correct reading of the statute is not subject to reasonable disagreement; the group activity requirement is compelled based on the plain wording of the statute. See United States v. Ruiz-Gea, 340 F.3d 1181, 1187 (10th Cir.2003). Because the statute of conviction requires group activity, and because it is undisputed that DeChristopher acted alone, DeChristopher was convicted based on insufficient evidence of guilt. All four prongs of the plain error test are satisfied in this case because “a conviction in the absence of sufficient evidence of guilt is plainly an error, clearly prejudiced the defendant, and almost always creates manifest injustice.” United States v. Goode, 483 F.3d 676, 681 n. 1 (10th Cir.2007) (footnote adopted by the court en banc).
Given the legislative history of FOOGLRA’s enforcement provision, there can be no doubt that Congress was targeting boiler-room operations run by scheming oil and gas speculators, not the actions of a solitary intermeddler at an auction. If Congress passed § 195(a)(1) to make actions such as DeChristopher’s unlawful, “it did so with a peculiar choice of language and in an unusually backhanded manner.” Williams, 458 U.S. at 287, 102 S.Ct. 3088. Even under the plain error standard, DeChristopher’s conviction for violation of § 195(a)(1) cannot be upheld in the absence of proof of group activity.
Ill
I would reverse the judgment of the district court as regards the conviction under § 195(a)(1). I would otherwise affirm the judgment.

. As the majority correctly notes, it is unsettled in this circuit whether, in resolving a defendant’s sufficiency-of-evidence challenge, we look to the elements of the crime as outlined in the relevant statute, or instead to the elements as described in agreed-upon or otherwise unchallenged jury instructions. Op. at 1091 n. 4; see also United States v. Romero, 136 F.3d 1268, 1273 (10th Cir.1998) (“the case law in this circuit clearly establishes that we adhere to the law of the case doctrine, whereby the Government is required to prove all elements put forth in unchallenged instructions to the jury, even if the Government would not, under law, be otherwise required to do so.”). It is unnecessary to decide that question in this case because, in my view, DeChristopher prevails under either approach (indeed, it would be more beneficial to DeChristopher if we were to look only to the elements as described in the jury instructions, because they utilized only a portion of the relevant statutory language).

. DeChristopher vigorously contests forfeiture by arguing that he raised this issue in his proposed jury instructions, motion to dismiss, testimony on his own behalf, and defense counsel’s opening and closing statements to the jury. But one strains to find even the most oblique references at trial to the group-activity argument now raised. The closest defense counsel came to raising the argument came during closing argument, where he argued that DeChristopher "didn't have a plan with other people that he had conspired with ... to go down [to the auction] and do anything.” Aplee. Supp.App. at 7-8. Even viewed in the most charitable light, DeChristopher never gave the district court the opportunity to directly address whether evidence of group activity was required.

. These commentators also explained that the enforcement provision in § 195(a)(1) was “intended to give teeth to the drive for integrity in the leasing process of the nation's oil and gas lands." Sansonetti & Murray, supra, at 414. Additionally, a leading treatise explains that Congress added the enforcement mechanism "to combat the fraud allegedly prevalent under the simultaneous leasing system.” George Cameron Coggins & Robert L. Glicksman, Public Natural Resources Law § 39:20 (2d ed.2012).